Max Swiren v. Commissioner.
Swiren v. Commissioner
Docket No. 18298.
United States Tax Court
1949 Tax Ct. Memo LEXIS 51; 8 T.C.M. (CCH) 924; T.C.M. (RIA) 49251; October 11, 1949
*51 Petitioner, on his withdrawal from a law partnership, received cash and tangible assets in the amount of $40,506. In his income tax returns he treated the transaction as a sale of capital assets. Held, that a portion of the sum received represented payment for his proprietorship interest in the partnership and the balance was ordinary income in settlement of his interest in earned but uncollected fees. Ben W. Heineman, Esq., for the petitioner. Harold H. Hart, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion This proceeding involves a deficiency in income tax of $16,094.41 for the calendar year ended December 31, 1944, viz., $10,496.02, which the Commissioner originally determined, and an additional $5,598.39, which the respondent *52 claimed in his amended answer to the petition. The sole issue is whether the income realized by petitioner incident to his withdrawal from a law partnership in 1944 is taxable at capital gain rates on the theory that he had disposed of a capital asset, or taxable as ordinary income in so far as it represents petitioner's shares of fees earned but not collected. The case has been submitted on a stipulation of facts and oral testimony. Findings of Fact The petitioner, a resident of Glencoe, Illinois, prepared his Federal income tax return for the calendar year 1944 on the cash basis and filed his return with the Collector of Internal Revenue for the first district of Illinois, at Chicago, Illinois. The petitioner was admitted to practice law in Illinois in 1927. His first employment was with the firm of Levinson, Becker, Frank, Glenn & Barnes, one of the oldest law firms in Chicago. The names "Levinson-Becker"had been the first two names of the firm name since 1912. Although Levinson retired from the firm in 1932 and died in 1941, his name has been continued as the first name in the successor firms down to the present time. In February, 1932, petitioner, George Gilbert, and *53 Don M. Peebles became members of the firm and the firm's name was changed to Levinson, Becker, Gilbert, Peebles & Swiren. At that time, petitioner purchased from Becker a 10 per cent capital interest in the firm for which he paid $10,000 in cash. Upon the retirement of Gilbert in 1934, one-half of his capital interest in the firm, or an additional 10 per cent capital interest, was purchased by the petitioner for $14,750 in cash and the remainder was purchased by the other partners. The amounts paid to Gilbert for his interest were substantially in excess of his share of the aggregate of all of the assets of the firm, including physical assets, accounts receivable, and fees earned. The name of the firm was changed at that time to Levinson, Becker, Peebles & Swiren and the firm continued to operate under that name until the withdrawal of petitioner from the partnership in 1944. Petitioner purchased from various partners from time to time portions of their capital interests in the firm and by 1944 he had made an aggregate cash investment of $33,500. During the same period, petitioner received a return of his capital investment in the partnership in the aggregate amount of $14,897.74. *54 At the time of petitioner's withdrawal from the firm, [1] his net capital investment amounted to $18,602.26 and he then owned a capital interest of 30 per cent. At the time of petitioner's withdrawal from the partnership, the drawing accounts of the three proprietary partners were as follows: Benjamin V. Becker
$2,500.00 per month
Don M. Peebles
2,000.00 per month
Petitioner
2,000.00 per month The earnings of the partnership, after deducting all expenses, drawing accounts, and the participations of the junior partners, were divided as follows: Benjamin V. Becker
40%
Don M. Peebles
30%
Petitioner
30%
Shortly before the dissolution of the partnership and as a basis for settling his interest in the firm, petitioner submitted a statement setting forth his determination of the value of his partnership interest and his interest in the partnership assets. The items listed in the statement were as follows: Firm equity - October 31, 1944
$ 15,628.00 *
Billed fees (excluding entirely all
fees billed prior to January 1,
1944)
12,800.00
Library - additional value *
6,300.00
Leasehold improvement - additional
value *
1,500.00
Furniture and fixtures - additional
value *
3,000.00
Supplies
700.00
Unbilled fees (exclusive of Midland)
106,093.00
Deferred charge (Public Adminis-
trator contributions during this
year)
5,000.00
Petitioner's Valuation of Partner-
ship Assets
$151,021.00
Less distribution to Ben Heineman,
a junior partner
5,400.00
$145,621.00
Petitioner's 30% interest in the
above total
$ 43,686.30
*55 Petitioner negotiated the sale of his interest exclusively with Becker. In arriving at the sale price, there was no agreement reached or discussion had as to the value of any of the underlying assets of the partnership. The firm of Levinson, Becker, Peebles & Swiren was dissolved as of December 31, 1944, pursuant to a written agreement dated December 13, 1944. This agreement provided that petitioner sold and assigned to Benjamin V. Becker and Don M. Peebles all of his share and interest in the firm, excepting only and excluding the Midland fee. The agreement was signed by Benjamin V. Becker, Don M. Peebles, Max Swiren, and B. W. Heineman. The agreement names Becker, Peebles and Swiren as the proprietary partners and Ben W. Heineman as junior partner with no proprietary *56 interest. The agreement defines Swiren's share and interest in the firm as "the name and good will of the Firm, all furniture, fixtures, library, cash, fees earned whether or not billed, and accounts receivable, excluding, however, the Midland fee." It then states that: "The consideration for such share and interest, so sold and assigned, shall be as follows: "(a) Benjamin V. Becker and Don M. Peebles shall concurrently herewith pay the sum of Forty Thousand Dollars ($40,000.00) in cash to Max Swiren;" With respect to liabilities and obligations of the firm, it provides: "(b) Benjamin V. Becker and Don M. Peebles assume and agree to pay and discharge all liabilities and obligations of the Firm of every kind and description, including, without limiting the generality of the foregoing, the promissory note of the Firm payable to the City National Bank & Trust Company, the lease for the premises now occupied by the Firm at One North LaSalle Street, Chicago, Illinois, and the payment of the participation agreed to be due to Ben W. Heineman, junior partner, as hereinafter stated, and do hereby indemnify Max Swiren and Ben W. Heineman, and agree to hold each of them harmless from *57 any and all claims, liabilities and obligations of or asserted against the Firm, including claims for funds or for property deposited by or for the account of clients, and any claims which may be asserted against the Firm by the remaining partners, Harold M. Keele and Frank Greenberg." Under its terms, the agreement also assigned to Swiren, in addition to the cash consideration of $40,000, four typewriters and accompanying Line-a-times, and twelve steel file cabinets having a book value of $506.18. Incident to final dissolution, the partners agreed that: "2. As a basis for our accounting, we actually terminated the partnership, so far as participation in income and expenses is concerned, as at October 31, 1944. All three partners participate in income and expenses up to that date; Benjamin V. Becker and Don M. Peebles alone participate in income and expenses after that date." Petitioner received, pursuant to the agreement and during the taxable year, $40,000 in cash and assets of the fair value of $506.18. A partnership return of income prepared on the cash basis was filed by Levinson, Becker, Peebles & Swiren for the calendar year 1944, with the Collector of Internal Revenue, *58 Chicago, Illinois, reporting net income of $118,708.75, and giving petitioner's share of the net income as $29,917.26. Petitioner's Federal income tax return, filed on the cash basis, reported $29,917.26 as income from Levinson, Becker, Peebles & Swiren. Petitioner also reported on this return the income resulting from the disposition of his interest in the partnership assets, including uncollected fees, as follows: Schedule of Capital Gains and Losses
Taxable
Date
Selling
Gain
Gain
Security
Acquired
Date Sold
Price
Cost
or Loss
or Loss
Partnership
interest in
Levin-
1/ 2/32
son, Becker,
Peebles and
8/ 6/42
12/13/44
$38,850.00
$18,314.89
$20,535.11
$10,267.52
Swiren
12/22/34
Since both the partnership and the petitioner were on a cash basis, no income tax was paid on uncollected fees disclosed in the petitioner's estimate of his interest in the firm. In the notice of deficiency, the Commissioner increased income as disclosed by petitioner's return of the taxable year 1944 by one item of $22,775.92, and in explanation thereof stated: "* * * the withdrawal by you from the partnership of Levinson, *59 Becker, Peebles & Swiren during the year 1944 resulted in the receipt by you of ordinary income in the amount of $22,775.92 and not in capital gain in the amount of $10,265.67 as reported by you in your income tax return for that year; accordingly the amount of $22,775.92 has been included in your gross income for the calendar year 1944 and the amount of $10,265.67 reported in your return for that year as a capital gain has been eliminated therefrom." In respondent's amended answer to the petition it is alleged that: "* * * the Commissioner erred in favor of the petitioner by determining that upon the dissolution of said partnership petitioner was in receipt of ordinary income of $22,775.92, whereas in truth and in fact the petitioner realized ordinary income of $31,830.40 in 1944 for his interest in billed and unbilled partnership fees, and received $8,169.60 in cash and $506.18 in assets in kind for his interest in said partnership assets other than billed and unbilled fees, and in connection therewith sustained a loss, the deduction of which is limited by Section 117 (d) of the Internal Revenue Code to $1,000.00, plus the petitioner's gains from the sale *60 or exchange of capital assets of $300.87." Opinion ARUNDELL, Judge: Petitioner in 1944 withdrew from the law firm of Levinson, Becker, Peebles & Swiren and at the time received in settlement of his interest in the firm $40,000 in cash and property valued at $506.18. Petitioner not only had as a partner the right to receive a percentage of the fees earned but he also owned a proprietorship interest in the firm which he had purchased for cash. The sum received by him upon his withdrawal was in settlement of both his proprietorship interest and his claim to various fees which had been earned but not yet billed or collected. It is petitioner's contention that this transaction was, in effect, the sale of his interest in the partnership and as this interest was in the nature of a capital asset, the profit realized was taxable only to the extent of 50 per cent. It was on this basis that petitioner made his return. The respondent in his determination of the deficiency recognized that petitioner had a proprietorship interest in the law firm and first permitted him to recover the full amount of his unrecovered capital outlay in acquiring this interest. The balance of the money received *61 by petitioner was taxed to him as ordinary income and was said to represent petitioner's interests in fees heretofore earned by him but not yet collected. In an amended answer, respondent asked for an additional deficiency, which he arrived at by treating $31,830.40 of the $40,506 received as in settlement of petitioner's interest in uncollected fees and therefore taxable as ordinary income, and the balance was considered as a return of capital incident to the disposal of petitioner's proprietorship interest in the partnership. Under this latter treatment, petitioner would have suffered a capital loss on the sale of his proprietorship interest. For reasons which we will more full set forth, we think respondent's determination as it appears in the notice of deficiency must be accepted as disposing of the present controversy. We think it is now well settled that a partner's sale of his distributive interest in past earnings upon which no tax has been paid does not convert the transaction into a capital item and such sale does not relieve a partner from the necessity of paying a tax thereon as ordinary income. A case very much in point is Helvering v. Smith, 90 Fed. (2d) 590, *62 decided by the Second Circuit Court of Appeals. The petitioner in that case retired as a member of a New York law firm which a the time had assets consisting of furniture, equipment, a library, and accounts, both billed and unbilled, for services theretofore rendered. In denying petitioner's contention that what he had disposed of was a capital asset, the court said, in an opinion by Judge L. Hand: "The transaction was not a sale because he got nothing which was not his, and gave up nothing which was. Except for the 'purchase' and release, all his collections would have been income; the remaining partners would merely have turned over to him his existing interest in earnings already made. As he kept his books on a cash basis, it is true that he would have been taxed only as he received the accounts in driblets, but he would have been taxed upon them as income. The purchase of that future income did not turn it into capital, any more than the discount of a note received in consideration of personal services. The commuted payment merely replaced the future income with cash. * * * Nobody would suggest that the sale of a declared dividend payable in the future turns the cash received *63 into capital." In Doyle v. Commissioner, 102 Fed. (2d) 86, petitioner, a member of a law firm, upon dissolution of the firm sold his interest in a fee which had not yet been collected, and advanced the contention that what he had sold was a capital asset. The court held that what was received by petitioner for his interest in the fee was ordinary income and stated that, "the fact that he sold his interest for a fixed sum cannot in any way affect the inherent nature of the claim as being one for services rendered." See Bull v. United States, 295 U.S. 247, 256. In connection with the settlement incident to petitioner's withdrawal from the firm, he prepared and turned over to Becker, the senior partner, a statement or estimate of how he figured his interest and we have in our finding set forth that statement. The estimate set a figure for the tangible assets of the partnership and also an estimate of fees earned but unbilled. Petitioner's interest as thus figured came to $43,686.30. It appears that in the discussion which took place between petitioner and Becker, the latter stated he would not dicker over items, and thereupon made an offer of $40,000 which *64 petitioner accepted. There was no allocation made between petitioner's proprietorship interest and his interest in the fees and there is no evidence in the record which would permit us to make an accurate allocation. The respondent in his amended answer has taken petitioner's estimate of $43,686.30 and allocated the $40,506 received by petitioner proportionately between the fees and the tangible property as they appeared on the estimate and by that method he seeks to support the allegations contained in his amended answer in which he prays for an additional deficiency. Respondent would allow for the proprietorship interest no larger amount than the bare value of the tangible assets of the partnership although it appears that in the purchase and sale of the proprietorship interests the prices paid were always considerably in excess of the value of the firm's tangible property. Petitioner, of course, contends that that increased price represented the value of the firm's good will. It is our opinion that there is not sufficient factual basis for the allocations now proposed by respondent in his amended answer. It follows that respondent has failed to establish a basis for an increased *65 deficiency and the increase prayed for is consequently denied. As we have already stated, the Commissioner in his notice of deficiency determined that what petitioner received was the cost of his proprietorship interest and the balance of the sum received represented his share in fees earned by the firm but not yet collected. Inasmuch as the petitioner and the members of his former law firm made no allocation between the various items involved in the settlement and there is no factual basis by which the court may make an allocation, and as the determination as made by the respondent is, in our judgment, eminently fair to petitioner, it will not be disturbed. Respondent appears to have reduced petitioner's net capital investment in his proprietorship interest in the partnership by $800 by reason of what has been characterized as a "bad debt adjustment". This was error. Decision will be entered under Rule 50. Footnotes
1. In evaluating petitioner's interest, Becker, Peebles and Swiren terminated the partnership, for accounting purposes, as of October 31, 1944.↩
*. Firm equity (net worth) as of October 31, 1944, in the amount of $15,628, was taken from the firm's balance sheet as of that date. That balance sheet, dated October 31, 1944, prepared on a cash basis, excluded (1) all uncollected fees, billed or unbilled, and (2) good will. The "additional value" figure in the above recitation represents petitioner's estimate of the excess over book value, less depreciation.↩